**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1054-23
A-2189-23

NFI REAL ESTATE, LLC, and
TURNPIKE CROSSINGS VI, LLC,

     Plaintiffs-Appellants,

v.

FLORENCE TOWNSHIP ZONING
BOARD OF ADJUSTMENT,

     Defendant-Respondent.

_____

Argued April 10, 2025 – Decided April 23, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket Nos. L-1987-22 and L-0993-23.

John C. Gillespie argued the cause for appellants (Parker McCay, PA, attorneys; John C. Gillespie and Alexis C. Smith, on the briefs).

David C. Frank argued the cause for respondent.

PER CURIAM

These are back-to-back appeals involving an application for a use variance by plaintiffs NFI Real Estate, LLC (NFI) and Turnpike Crossings VI, LLC, to construct a warehouse on two tracts of land (the Wainright tract and the Lounsberry tract), on Florence-Columbus Road, which straddle the boundary lines of Florence and Mansfield Townships. In A-1054-23, plaintiffs appeal from an October 27, 2023 order denying their complaint in lieu of prerogative writs challenging defendant the Florence Township Zoning Board of Adjustment's (Board) denial of a use variance for the Wainwright tract. In A-2189-23, plaintiffs appeal from a February 9, 2024 order, which similarly denied their complaint in lieu of prerogative writs arising from the Board's denial of a variance for the Lounsberry tract. We affirm.

NFI is a real estate development company. Turnpike Crossings VI acquired the Wainright and Lounsberry tracts in 2021. NFI owns Turnpike Crossings VI.

The Wainwright tract is approximately 216 acres and is bounded by the New Jersey Turnpike to the north, Exit 52 of Route 295 to the east, Old York Road to the west, and Florence-Columbus Road to the south. The eastern portion of the tract, approximately 118 acres, lies in Mansfield with the remaining ninety-eight acres in Florence.

The Wainwright tract is zoned by Florence for Special Manufacturing (SM). The purpose of the SM zone is to "provide areas for industrial uses which are of lesser magnitude and intensity than uses permitted in industrial districts." Distribution centers and warehouses are permitted uses in the SM zone. No building height greater than thirty feet, or two stories, is permitted in the zone. Florence also contains a General Manufacturing (GM) zone, which permits structures up to seventy-five feet in height, but plaintiffs' tracts are not in this zone.

The land use element of Florence's 1999 master plan refers to the SM zone on the border with Mansfield north of Route 295 as appropriate because it was "less likely to result in offsite impacts than permitted by a GM [General Manufacturing] designation." The GM designation was "inappropriate in this area because it would permit an extension of potentially high impact uses in an area where a transition to less intensive impact is more appropriate." The master plan also refers to the "general openness and flat topography" of the area and its proximity to the Route 295 interchange. Also, the "visibility from the interstate and from some of the main roadways into and through Florence and Mansfield Townships can be an important attribute to commercial uses that need high visibility, a characteristic more common to SM th[a]n GM uses."

3

The Mansfield portion of the Wainwright tract is zoned as Office, Distribution and Laboratory (the ODL district). Warehouses and distribution facilities with buildings up to fifty feet tall are permitted in the district.

Plaintiffs filed their initial development application in October 2021. Mansfield granted the application on February 28, 2022. The Board conducted four days of hearings on plaintiffs' application.

In Mansfield, plaintiffs sought and obtained site plan approval to construct a 1,105,000 square foot warehouse, forty-eight feet high, of which 10,500 square feet would be used as office space. The warehouse would be a "bulk distribution center" and would be built entirely within Mansfield. The building would cover over twenty-five acres. The Florence portion of the tract would contain parking and loading spaces, a septic disposal system, two stormwater management basins, and the driveway entrance to the facility, which would run from Florence-Columbus Road to the warehouse. Since the principal structure would be in Mansfield, plaintiffs sought a use variance for the accessory uses, without a principal structure in the SM zone. The Board's resolution noted plaintiffs sought "a use variance pursuant to N.J.S.A. 40:55D-70(d)(1)."

Plaintiffs also sought bulk variances including the number and size of the parking spaces, sidewalk requirements, and the width of the aisles in the parking

lot.  A variance was also required for the number of parking spaces, 604, whereas 1148 (one space per 200 square feet) was required by ordinance.

Plaintiffs adduced testimony from a professional planner, who testified the warehouse would be located close to the Route 295 interchange and away from agricultural and residentially zoned lands in Florence.  The driveway would be in Florence because the Mansfield portion of the tract had a limited frontage.  The planner testified the requested use variance was "more technical than substantive" because its principal use of serving as a warehouse was permitted in Florence and Mansfield, both of which had complementary zoning in terms of use.  The site was particularly suited for the driveway due to the restriction on development because of the presence of wetlands on the property. The variance would promote an efficient use of land and the general welfare and would not conflict with development in Mansfield.  There would be no adverse impact to the public or the zoning ordinance.

Plaintiffs' engineer testified the driveway in the Florence portion of the project lined up directly with the proposed driveway across Florence-Columbus Road where the development on the Lounsberry tract was to be located. Plaintiffs produced an acoustical engineer, who testified eighty percent of the truck traffic would use the Route 295 interchange in Mansfield, while twenty

5

percent would head west on Florence-Columbus Road in Florence to Route 130. The additional trips generated by the development would not have a significant impact on the Florence-Columbus Road-Route 130 intersection in Florence. The proposed warehouse would be approximately 1,400 feet from the nearest residential area.

Plaintiffs' traffic expert testified the height and use of a warehouse building does not factor into making traffic projections under the Institute of Traffic Engineers' (ITE) handbook. In other words, building height was not a factor in determining trip generation. The ITE warehouse category includes structures twenty-four feet and higher and does not further distinguish them. Rather, under the ITE, the independent variable recommended in determining a building's effect on traffic is "typically the square footage of the building." Therefore, the traffic engineer concluded the traffic impact at the Florence-Columbus Road-Route 130 intersection would be "de minimis."

NFI's chief development officer testified he expected the facility would operate on a twenty-four-hour, seven-days-a-week basis, with 400 employees. He did not expect the tenant to operate a "high intensity fulfillment" bulk distribution center.

A-1054-23

The Board's traffic expert also testified. He opined the traffic trip increase at the proposed roadway intersection with Florence-Columbus Road would be "100 or so higher in each direction," during the peak of the morning and afternoon.

The Board's professional planner testified the property was not particularly suited to the proposed accessory uses because of the differences in intensity permitted in the SM zone compared to Mansfield's ODL zone. Granting the variance would pose a substantial detriment to the public good because the development would result in additional traffic, particularly at the Florence-Columbus Road-Route 130 intersection, which was approximately 1.4 miles west of the site in Florence. The height of the proposed building would "generate[] . . . a lot more traffic than . . . the [thirty]-foot high conventional" height. According to the planner, the proposed building was a "huge concern" because it "has the potential to have significantly more traffic than what you even may be told about the current application." He concluded the increase in traffic was the most substantial detriment to the public good.

The planner testified the site was not suitable for the proposed use because it was being transitioned away from an industrial zone under the proposed new

A-1054-23

master plan.[1] He also opined the proposal did not meet any of the design criteria in terms for landscaping and buffering.

The Board denied plaintiffs' application on May 31, 2022, and memorialized its decision in a resolution dated September 1, 2022. The resolution found the permitted uses in the SM zone were "consistent with the concerns about intensity and negative externalities expressed in the 1999 Master Plan." It noted that had the proposed building been in Florence, a height variance would have been required. The Board considered the overall tract as a single parcel for development, even though it was in two municipalities.

The Board found the testimony of plaintiffs' planner was not credible because he did not address the "substantial difference" between the permitted building height in the SM zone and the actual building height approved by Mansfield. His testimony the zoning of the Mansfield and Florence portions of the parcel were complimentary was unsupported. Because none of the testimony "provided a comparative analysis of the traffic impacts of the proposed [fifty foot] tall building with the [thirty foot] tall building" permitted in the SM zone

---

[1] The township planning board ultimately adopted a new master plan in 2022, which recommended rezoning the SM zone to an agricultural zone. However, this is not a consideration for us because the 1999 master plan was in force at the time of plaintiffs' application and is the applicable rubric. N.J.S.A. 45:55D-10.5.

A-1054-23

"and therefore the intensity of the proposed use, the Board did not find that testimony credible and probative with regard to the special reasons, absence of substantial impairment of the zone plan, and the enhanced quality of proof necessary for approval of a use variance pursuant to N.J.S.A. 40:55D-70(d)[(1)]."

The Board concluded

> the proposed building on the overall parcel . . . is [sixty-seven percent] taller than allowed, and accessory uses associated with that building, would be a more intense use than the Planning Board and governing body intended at the subject property, would be substantially detrimental to the public good, and would substantially impair the zone plan and zoning ordinance.

Furthermore,

> [t]he application . . . contemplates development that is substantially more intense than anticipated by the governing body, and, therefore, allowed in the SM Zone District. There is no credible, probative evidence before the Board that would allow it to deviate from the zoning standards set down by the governing body or which would justify this Board rethinking the determinations of the Planning Board and governing body that link the height of permitted structures with their anticipated intensity. In the absence of such evidence, it would be improper for the Board to arrogate to itself an authority to second-guess the policy determinations of the governing body.

Like the Board, the trial judge found that because the height of the proposed building in Mansfield exceeded the permitted height in Florence's SM zone by eighteen feet, "this rendered the uses sought to be approved on the Florence side of the property as substantially more intense than Florence's regulations contemplated." At the outset, the judge noted she was applying the "less stringent standard" of review articulated in Coventry Square, Inc. v. Westwood Zoning Board of Adjustment, 138 N.J. 285 (1994). This requires plaintiffs to show "only that the [variance] will not offend the purpose of the height restriction and will be consistent with the surrounding neighborhood." Plaintiffs had argued the Board's resolution appeared to apply the more stringent standard under Medici v. BPR Co., 107 N.J. 1 (1987).

The judge found the accessory uses located on the Florence side of the property were "not height neutral. Height is cubic space, and every foot of height can accommodate racks of pallets. For a warehouse, cubic feet storage matters as much or more than square feet because pallets accommodate more goods[,] and height increases capacity." The fact the proposed warehouse was eighteen feet higher than the maximum building height permitted in Florence would "result in a huge increase in space and, therefore, merchandise, which means more goods, more trucks, more traffic[, and] . . . more intense use."

10

The judge observed the accessory uses of the warehouse could be "as . . . or more impactful to a community than the warehouse itself."  Indeed, "the accessory uses in Florence must accommodate all points of ingress and egress to the workplace, . . . the parking for . . . and . . . traffic from trucks and employees, which will impact significantly Florence Township."  Additionally, "all of the traffic, the congestion, and use generated from this warehouse will literally fall on Florence's doorstep."  The reduction in the employee's parking spaces would not solve the problem of the traffic created by the trucks.

The judge rejected plaintiffs' traffic engineer's opinion the height of the warehouse would have no impact on traffic.  His testimony that height was not a variable under the ITE did not explain the impact on traffic by having a taller warehouse.  The judge remarked "no one knows what the traffic impact would be.  It has not been measured, as height was not even considered."  Therefore, plaintiffs did not meet their burden to show the traffic and intensity would not increase.

The judge found the Board properly relied on its master plan, which addressed the purposes of the SM zone.  She noted the existence of the GM zone, which permits building heights up to seventy-five feet, demonstrated "the township intended to draw a distinction between the two zones and that height

11

was considered. . . . The township permits buildings only [thirty]-feet high in the SM district . . . so as to control the intensity of use to be consistent with the surrounding neighborhood."

The judge concluded plaintiffs failed to show the Board acted arbitrarily, capriciously, or unreasonably. The facts demonstrated the Board was "well within their rights to reject the requested use variance."

The application in A-2189-23 was made on October 19, 2021, and sought a height variance pursuant to N.J.S.A. 40:55D-70(d)(6), a bulk variance for parking spaces, and site plan approval to construct two warehouse buildings. The Board limited its decision to the height variance because plaintiff did not complete its submission of evidence concerning the details of its site plan. It conducted six days of hearings culminating in the issuance of a resolution, which denied the application on December 5, 2022.

The Lounsberry tract is located on Burlington-Columbus Road and is 133 acres, 123 of which are in Florence, with the remainder in Mansfield. Florence-Columbus Road is to the north, Route 295 is to the east, Burlington-Columbus Road is to the south, and Old York Road is to the west. Route 130 is approximately a mile-and-a-half north and west of the site. The boundary line between Florence and Mansfield Townships runs north-south near the eastern

12

edge of the site. The Florence portion is in the SM zone, except for a small easement that is in an agricultural zone. The Mansfield portion of the tract is in the ODL zone.

Plaintiffs proposed the construction of a forty-eight-foot high, 523,644 square-foot building on the Lounsberry tract. This would be the smaller building of the two warehouses to be constructed. The larger building, which we previously discussed, would be in the southerly portion of the tract while the smaller one would be in the northerly portion, near Florence-Columbus Road. Approximately 3,400 square feet of the larger building would be in Mansfield; the smaller building would be completely in Florence.

NFI's chief development officer described the proposed warehouses as bulk general storage facilities which would operate around the clock and have 200 employees per building. He testified the additional height of the buildings was needed mainly for advances in racking and material handling, and technology, which "have enabled companies to store more products in a smaller footprint," i.e., with less impervious coverage. Thirty-foot-high warehouses were "antiquated."

Plaintiffs' traffic expert testified the site would have an access road to Florence-Columbus Road at the north, and non-truck traffic vehicular access to

13

Burlington-Columbus Road at the south. The exit onto Florence-Columbus Road would align with the exit from the Wainwright tract on the northerly side of that road. The proposed driveway would be about a mile and a half from Route 130.

The traffic expert estimated the facility would generate 185 and 242 trips during the morning and afternoon peak, respectively. Fourteen of the morning and thirty-eight of the afternoon trips would be trucks. There would be 1,997 trips over the course of a day, approximately 157 of which would be trucks. Eighty percent of the truck traffic would utilize Route 295, while the remaining twenty percent would proceed in the opposite direction on Florence-Columbus Road to turn left onto Route 130 to access the New Jersey extension of the Pennsylvania Turnpike. The development would result in twenty-one additional trips, three of them by trucks, to the Route 130-Florence-Columbus Road intersection in the morning peak, and twenty-seven additional trips, seven of them by trucks, in the afternoon peak.

The expert reiterated the proposed height of the buildings did not factor in the traffic counts. The ITE trip generation manual made no distinction in trip generation once the building was higher than twenty-four feet. Rather, the "independent variable" is the square footage of the building.

A-1054-23

Plaintiffs also adduced testimony from a commercial real estate expert, who testified that in the prior ten years he had not seen a warehouse with a thirty-foot height come to market, because warehouses have gotten taller as inventory has increased. The development of high-reach equipment has also led to taller warehouses, which require fewer employees. Thirty-foot-tall warehouses were becoming functionally obsolescent.

Plaintiffs' planner testified the Board had granted a similar height variance in the SM zone in 2019. He asserted there was "really no distinction" between a thirty-foot-tall and a fifty-foot-tall warehouse for purposes of trip generation and traffic impact. This was true here because the proposed development was not "a fulfillment center . . . that principally deliver[ed] directly to consumers, but rather a high-cube warehouse facility that is principally used to store manufactured goods prior to their distribution, largely to either retail locations or other warehouses."

The planner noted the buildings would be set back much further than the SM zone minimum and cited the proposed landscaping and buffering as mitigating any potential detrimental impact to light, air, vision, and open space. He testified there was no evidence the 1999 master plan cited traffic impact as a concern related to the thirty-foot height limit in the SM zone and so the height

A-1054-23

variance could be granted without substantial detriment to the zoning plan and ordinance.

The Board's traffic engineer testified traffic was a concern. At its peak, the afternoon traffic at the left turn lane at the intersection of Florence-Columbus Road and Route 130 exceeded the length of the lane, resulting in long delays. He expressed concern plaintiffs had not considered the trip generation resulting from the proposed development would make the traffic delays more acute. Likewise, a traffic buildup could result from vehicles entering and exiting the Route 295 intersection from Florence-Columbus Road, since the site's roadway was only approximately 1,600 feet from the interchange.

The Florence Township chief of police submitted a report stating the Florence-Columbus Road-Route 130 intersection had received a failing grade for traffic flow during the peak morning and afternoon hours. When combined with the Wainwright development, the daily anticipated trips would total 3,554, with 557 being by tractor-trailers. The report concluded "[t]his is a major concern as both sites converge at a proposed intersection on an already failing two-lane road, County Route 656[ (Florence-Columbus Road)]."

On April 3, 2023, the Board issued a resolution denying the height variance. It rejected plaintiffs' argument the obsolescence of the thirty-foot-

A-1054-23

high warehouses provided special reasons for granting the variance because "the Board is obliged by [N.J.S.A. 40:55D-10.5] . . . to apply former zoning standards and master plan ideas to this application[] but is being asked to apply current market conditions to circumvent those standards and ideas."

The Board also found plaintiffs failed to meet the negative criteria. "The testimony of [plaintiffs'] other witnesses does not support the conclusions drawn by [plaintiffs'] planner, and his dismissal of traffic as a significant matter of concern for the drafters of the 1999 Master Plan is not supported by the actual language of that document." The Board found "the proposed buildings . . . would be [sixty seven percent] taller than allowed[,] . . . a more intense use than the Planning Board and governing body intended at the subject property, . . . substantially detrimental to the public good, and . . . substantially impair the zone plan and zoning ordinance." The development was "substantially more intense than . . . allowed in the SM Zone."

The Board declined "to second-guess the policy determinations of the governing body." It concluded there was "no credible, probative evidence . . . that would allow it to deviate from the zoning standards set down by the governing body or . . . justify [it] rethinking the determinations of the Planning

17

Board and governing body that link the height of permitted structures with their anticipated intensity."

On May 19, 2023, plaintiffs filed a complaint in lieu of prerogative writs, challenging the denial of the application for a height variance. They argued the Board applied the more stringent Medici standard. Plaintiffs also asserted the denial of the variance would work a hardship. They reiterated the thirty-foot height requirement was obsolete by virtue of the current warehousing market.

Plaintiffs also alleged the Board ignored the evidence adduced through its witnesses, five of whom testified as experts and two as fact witnesses who "gave uncontroverted[,] unrebutted testimony." They argued the Board did not discuss its own expert's testimony at length because it was not "substantive, helpful[,] or . . . relevant." Plaintiffs asserted the rejection of its evidence where there was little or no countervailing evidence "was the epitome of an arbitrary, unreasonable[,] and capricious decision."

The trial judge was unpersuaded. She found the Board did not apply Medici because if it had "done so[,] it would have required proofs of particular suitability of the site and that the proposed use['s] special reasons needed an[] enhanced qualify of proof. Instead, the [B]oard analyzed the proposed height

A-1054-23

variance [under] Grasso[2] which establishes two paths for providing special reasons." The judge noted the resolution "never mentions the particular suitability of the site for the proposed use nor does [it] ever ask . . . plaintiffs to address an enhanced quality of proof." Instead, applying Grasso, the Board weighed whether the proposed structure "contemplates development that is substantially more intense than anticipated by the governing body."

The judge observed the hardship argument was not raised before the Board. Moreover, it was unsupported because an "inability to make the most profitable use of the site is insufficient to show hardship." Plaintiffs' "property [can] accommodate a warehouse. It is just not the warehouse that plaintiff wants."

The judge rejected the obsolescence argument regarding the thirty-foot height limit. She stated: "As in Grasso[,] financing, marketability and profitability remain beside the point" because plaintiffs were permitted to construct a warehouse in the SM zone. Plaintiffs' logic of yielding to current market preferences for warehouse sizes would render zoning regulation "superfluous[,] leaving towns at the whim of developers and profit margins."

---

[2] Grasso v. Borough of Spring Lake Heights, 375 N.J. Super. 41 (App. Div. 2004).

The forty-eight-foot-tall buildings plaintiffs wished to construct impacted the factors behind the height restriction, namely, adequate light and air, traffic congestion, and population density. And plaintiffs' chief development officer had testified the greater building height would allow the occupant to store more products. Plaintiffs' real estate expert had testified "users and developers are looking at ways to densify their storage [and to], increase capacity with less space utilization." Therefore, "the [B]oard's finding that the proposed use would be a more intense use than the [P]lanning [B]oard and governing [B]oard intended for the subject property is an entirely reasonable conclusion."

The judge held the evidence did not support the conclusions drawn by plaintiffs' traffic expert that there was no difference in traffic between a thirty-foot-tall and a forty-eight-foot-tall building. The expert admitted the data he relied on did not distinguish traffic generated based on building height for buildings over twenty-four feet tall. He could not "explain what the effect would be of a warehouse . . . that is fifty feet tall rather than thirty feet tall because the aggregated data developed by the [ITE] includes buildings with ceiling heights of twenty-four feet and greater. And building height is not an independent variable in the ITE equation." In other words, "[t]he ITE data . . . [did] not . . . distinguish between buildings that are thirty . . . or fifty feet tall." Therefore,

the Board could reject the expert's testimony because it did not "give the [B]oard the evidence it needs to determine traffic generation for a warehouse based on height differentials." Plaintiffs' "argument that height is neutral when it comes to warehouses is asking [the] court to turn a blind eye to common sense."

The judge also found the Board properly rejected the testimony regarding a three-dimensional rendering offered into evidence by plaintiffs. The witness who testified to the rendering was unable to demonstrate the warehouses' impact on nearby homes and crops.

The Board's rejection of the testimony of plaintiffs' planner was also not grounds for reversal. The planner testified the township recognized thirty-foot warehouses were no longer viable when it adopted new zoning plans and permitted another warehouse to be constructed at a height greater than thirty feet in 2019. He also opined traffic was not a material part of the township master plan, a height variance would advance the purpose of the municipal land use law (MLUL), and there would be no substantial detriment to the public good.

The judge found the Board addressed these points when it noted it permitted the construction of taller warehouses, "just not in the zone district and location for which [plaintiffs] seek approval." The fact the township permitted such construction elsewhere showed it had considered the public good and the

21

purpose of the MLUL. As a matter of law, the Board was not bound by its 2019 decision. "Moreover, the [B]oard correctly interpreted the inaction of the governing body with regard to changing the SM zone district height limitations following . . . [its 2019] approval to be a policy choice by the governing body."

The Board reasonably rejected the planner's testimony about the project not impacting the public good for the same reasons it rejected the other testimony related to intensity, namely that it "was founded on traffic data that does not support a comparison of traffic generation from shorter and taller buildings over twenty-four feet." The planner's testimony about the master plan was properly rejected because concerns about traffic "are universally recognized when it involves height restrictions." The Board was cognizant of the offsite impacts because its resolution quoted the master plan, which said:

> SM is the most appropriate future land use for the area north of I-195 because it is less likely to result in off-site impacts than those permitted by GM designation. In addition, it is the intermediate in the permitted intensity of development between the recovery facility and the GM are and the existing homes to the east, north, and west.

The judge found the Board could choose what evidence and testimony to accept or reject, and "[w]here reasonably made[,] such choice is conclusive on appeal." She concluded the Board's factual findings concerning the experts'

22

testimony were "amply supported by the record" and its denial of the variance was not arbitrary, capricious, or unreasonable.

I.

In A-1054-23, plaintiffs argue the Board acted arbitrarily, capriciously, and unreasonably in denying the requested use variance because it did not give due deference to Mansfield's zoning ordinance. To the extent it did give deference, plaintiffs maintain the Board erred in treating the variance request as a height variance under N.J.S.A. 40:55D-70(d)(6), rather than a "height neutral" use variance under (d)(1). Plaintiffs repeat the claim the Board improperly required them to present an enhanced quality of proof under Medici to obtain the (d)(1) use variance rather than the lower Coventry Square standard for permitted conditional uses. Regardless of the standard of proof, plaintiffs claim they presented sufficient evidence to obtain the use variance and the Board's denial was arbitrary, capricious, and unreasonable. Plaintiffs point to the Board's rejection of the testimony of plaintiffs' planner and its interpretation of the existing master plan regarding the SM zone, as evidence of the Board's errors.

In A-2189-23, plaintiffs repeat their application was not for a height variance. Even so, they argue there was substantial credible evidence in the

record to warrant approval of a (d)(6) height variance. Plaintiffs claim the Board and trial judge acted unreasonably in rejecting the expert testimony they offered and in applying the 1999 master plan to the facts of the case. They again point to a 2019 Board decision granting a height variance on a similar application.

## II.

Judicial review of land use matters is circumscribed since "public [land use] bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adj., 184 N.J. 562, 597 (2005) (citing Kramer v. Bd. of Adj., Sea Girt, 45 N.J. 268, 296 (1965)). The Supreme Court has repeatedly instructed that, "courts ordinarily should not disturb the discretionary decisions of local [land use] boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adj., 160 N.J. 41, 58-59 (1999). "Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, 45 N.J. at 296-97 (citing Ward v. Scott, 16 N.J. 16, 21 (1954)).

24

"[W]hen a party challenges a . . . board's decision through an action in lieu of prerogative writs, the . . . board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013) (citing Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 385 (1990)). "When reviewing a trial [judge's] decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial [judge].'" Jacoby v. Zoning Bd. of Adj. of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). We "defer[] to the actions and factual findings of local boards and may not disturb such findings unless they [are] arbitrary, capricious, or unreasonable." Id. at 462.

The MLUL gives zoning boards the power to grant or deny use, density, and height variances. N.J.S.A. 40:55D-70(d). "Because of the legislative preference for municipal land use planning by ordinance rather than variance, use variances may be granted only in exceptional circumstances." Kinderkamack Rd. Assocs., LLC v. Mayor & Council of Borough of Oradell, 421 N.J. Super. 8, 12 (App. Div. 2011).

N.J.S.A. 40:55D-70 requires a weighing of positive criteria or "special reasons," and negative criteria showing that "such variance or other relief can

be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." See Sica v. Bd. of Adj., 127 N.J. 152, 155 (1992). The burden of proof lies with the applicant to satisfy the positive and negative criteria required for a use variance. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adj., 152 N.J. 309, 323 (1998).

If a variance is "requested in connection with a permitted use, a lower threshold . . . is appropriate." Price v. Himeji, 214 N.J. 263, 296 (2013) (citation omitted). This less demanding standard "reflect[s] the significant differences between prohibited uses, on the one hand," and permissible uses that deviate from an ordinance, on the other hand. Coventry Square, 138 N.J. at 297.

Pursuant to these principles, we affirm in both appeals substantially for the reasons expressed in the trial judge's opinions. We add the following comments.

A-1054-23

A.

Where property is split between two municipalities, the land use boards in both municipalities "must consider the situation of the entire tract of land, not just the portion which happens to lie within its own boundary." Cox & Koening,

26

New Jersey Zoning & Land Use Administration, § 30-3, at 459 (2024). "Without a cooperative response from both municipalities, the property may not be susceptible to development. This fact may bear on the determination of whether a special reason exists under N.J.S.A. 40:55D-70(d), militating in favor of a variance." Ferraro v. Zoning Bd. of Adj. of Holmdel, 119 N.J. 61, 73 (1990) (citation reformatted). The fact the proposed use is permitted in the adjoining municipality "may suggest that the property in [the subject municipality] is uniquely suited for the proposed use." Ibid. Thus, the subject municipality "is obligated to give significant weight to the zoning ordinance and plan of the adjacent municipality . . . as well as to the character and uses of [the] surrounding property" in both municipalities. Id. at 74.

The Board did not have to accord the Mansfield ordinance significant weight pursuant to Ferraro, because the use here was permitted in Florence. The issue here was the increased intensity caused by the height variance as to which the Board was not required to ignore its own ordinance in favor of the Mansfield ordinance. We are satisfied the Board, and the trial judge thoroughly addressed this issue, and the judge did not err when she found the Board's interpretation of the evidence in the record was not arbitrary, capricious, or unreasonable.

We reject the notion that since the accessory uses for which plaintiff's sought a use variance was "height neutral," the Board erred in considering the height of the proposed Mansfield warehouse and, in effect, treated the application as one for a height variance under N.J.S.A. 40:55D-70(d)(6). As the trial judge correctly found, the Board could not ignore the height issue because of the increased intensity it brought with it in the form of traffic. We conclude the Board discharged its obligation to consider "the entire tract of land" when it denied the variance for these reasons.

B.

The record does not support plaintiffs' claims they were held to a higher standard of proof. The trial judge stated she applied the less-demanding Coventry Square standard, and plaintiffs did not sustain their burden to show they were entitled to the variance. This argument lacks merit.

The essence of the Board and the trial judge's rulings were plaintiffs failed to meet the negative criteria by establishing the proposed use variance would not "damage to the character of the neighborhood." As with any factfinder, a zoning board is free to accept or reject expert testimony. Bd. of Educ. of the City of Clifton v. Zoning Bd. of Adj. of Clifton, 409 N.J. Super. 389, 434 (App. Div. 2009). However, a board may not unreasonably reject expert testimony

"based only upon bare allegations or unsubstantiated beliefs." Cohen v. Bd. of Adj. of Rumson, 396 N.J. Super. 608, 617-18 (App. Div. 2007) (quoting N.Y. SMSA, Ltd. P'ship v. Bd. of Adj. of Weehawken, 370 N.J. Super. 319, 338 (App. Div. 2004)).

Our review of the record convinces us the trial judge was correct to conclude the Board's rejection of plaintiff's expert planner's testimony was reasonable. The building's height clearly bore some relation to its storage capacity, and thus its possible effect on traffic and the intensity of the proposed use. Therefore, the Board was correct not to view the driveway in isolation from the Mansfield portion of the development and deference to Mansfield's height ordinance, and approval of plaintiffs' plan was not required. The Board's concern over traffic was not hypothetical but instead supported by testimony showing the increased height of the warehouse would create an unacceptable traffic increase, including at the Florence-Columbus Road-Route 130 intersection.

We reject plaintiffs' challenge to the Board's reliance on the master plan because the master plan did not cite traffic as a "potential negative externality" or mention building height. These arguments do not persuade us there was

reversible error because the master plan highlighted concerns for "offsite impacts" and the "intensity of development" as its rationale for the SM zone.

A-2189-23

A.

Our Supreme Court has held "[t]he inability to comply with one or more of the conditions [of an ordinance] does not convert the use into a prohibited one and, thus, the application is not tested in accordance with the standards established in Medici that govern the application for a (d)(1) use variance." TSI E. Brunswick, LLC v. Zoning Bd. of Adj. of E. Brunswick, 215 N.J. 26, 43 (2013). For these reasons, we reject the assertion the Board treated the application as a general use variance under N.J.S.A. 40:55D-70(d)(1), as opposed to a height variance under N.J.S.A. 40:55D-70(d)(6). Unlike in A-1054-23, there is no evidence the Board applied the Medici standard, or that it viewed the application as anything other than a height variance under (d)(6).

In creating the (d)(6) variance,

> the Legislature reasoned that when a height deviation reached that level of nonconformity [exceeding the maximum height by ten feet or ten percent], the resulting structure arguably could be seen as something out of character with the structures permitted in the zone and thus should be reviewed under the enhanced standards of subsection d.

[Grasso, 375 N.J. Super. at 51 (alteration in original) (quoting Engleside at W. Condo. Ass'n v. Land Use Bd., 301 N.J. Super. 628, 639 (Law Div. 1997)).]

The special reasons necessary for a height variance, in the absence of undue hardship, must be tailored to the purpose for imposing height restrictions in the zoning ordinance. Id. at 52.

The negative criteria required for a height variance was addressed in Jacoby, where we reversed the granting of a height variance that was multiple times greater than the height permitted by the ordinance in that case. 442 N.J. Super. at 457, 462-67. We noted a "substantial height variance" can disrupt the municipal zone plan. Id. at 467. Therefore, we required the zoning board to make meaningful findings as to the intent and purpose of the zone plan, the reason for the height limitation, and how the proposed variance conformed to the intent and purpose of the zoning plan. Id. at 468.

Although the height differential plaintiffs sought here was not as great as Jacoby, the point of that case was for the Board to make the necessary findings. The Board and the trial judge did that here in parsing the testimony as to whether there was a relationship between height and traffic. The record shows the Board and the judge considered the intent and purpose of the zone plan and height limitation when they rejected plaintiffs' hardship argument. The zone plan was

31

also expressly considered when the Board explained the reasons why the master plan placed the Lounsberry tract in the SM zone, as opposed to the GM zone.

Finally, the Board's granting of a variance elsewhere in the SM zone was not dispositive. The record shows the structure in that matter was in the SM zone but north of Route 130, approximately two miles from the Lounsberry tract. The Board granted a height variance for a 48.3-foot-tall, 300,000 square-foot, warehouse because there was "no evidence in the record that the taller warehouse will be a substantially more intense use than a warehouse of conforming height." Although the primary potential impact on the public good was visual, the site was "peculiar in that it was extensively mined, so that the prevailing grade is substantially lower than the surrounding properties," and the existing trees that would remain in the buffer areas were as tall, or taller, than the proposed building. Therefore, the visual impacts of the additional building height would be "minimized into insubstantiality by the peculiar physical features of the site."

It is readily apparent traffic was not a concern in the prior approval and the concerns there were entirely different. Regardless, "each [use variance] case . . . must turn on its own circumstances." Kohl v. Mayor of Fair Lawn, 50 N.J.

268, 276 (1967) (citing <u>Andrews v. Bd. of Adj.</u>, 30 N.J. 245, 251 (1959)).

Therefore, the prior approval had no precedential effect.

For these reasons, the Board's decisions were not arbitrary, capricious, or unreasonable, and the trial judge did not err when she affirmed the Board. To the extent we have not addressed an argument raised on either appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in 1054-23 and affirmed in A-2189-23.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division